UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

QUOC ANH PHO,

    Petitioner,

    v.   CAUSE NO. 3:25-CV-977-CCB-SJF

KRISTI NOEM, SAMUEL OLSON, and
BRIAN ENGLISH,

    Respondents.

<u>OPINION AND ORDER</u>

Immigration detainee Quoc Anh Pho, by counsel, filed a petition under 28 U.S.C. § 2241, alleging he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1. Respondents answered the petition, and Pho filed a reply. ECF 7, ECF 10. The petition is ready to be decided.

Pho is a native and citizen of Vietnam who initially entered the United States on August 7, 1997, as a refugee. He became a permanent resident of the United States on February 5, 2003, but the next year he was ordered removed to Vietnam by an immigration judge on October 28, 2004, following a state criminal conviction. Upon his release from his criminal sentence, Immigration and Customs Enforcement (ICE) detained him in order to execute the removal order. However, he was released from ICE custody around April 2005 because he had been detained for more than 180 days without being removed and removal was not reasonably foreseeable. Pho was placed

on an order of supervision, which required him to check in annually. He has been checking in with ICE for almost twenty years with no compliance issues.

On October 17, 2025, Pho was arrested at his annual check-in at the Immigration and Customs Enforcement (ICE) Field Office in Dallas, Texas. After his detention, he was transferred to Miami Correctional Facility in Indiana, where he is now. Pho alleges he has received no information about the circumstances of his removal to Vietnam, nor has a third country for removal been identified. He says he has not been given any reason for the revocation of supervised release after he had been complying with his supervision since 2004. Pho had attempted to obtain travel documents from the government of Vietnam in 2020, but he got no response. He alleges his removal does not seem likely in the reasonably foreseeable future, and so his current detention is in violation of his due process rights and is unlawful under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## A. Subject Matter Jurisdiction

The court has an independent duty to ensure that subject matter jurisdiction exists in every case. *See Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021) ("[F]ederal courts, as courts of limited jurisdiction, must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction."). Respondents argue this court lacks subject matter jurisdiction over the petition because of 8 U.S.C. § 1252(g), which strips courts of jurisdiction, including in habeas, "to hear any cause or claim by or on behalf of any alien *arising from the decision or action* by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders*

2

against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added). Pho responds that he is not challenging the decision or action to execute the removal order entered against him. Instead, he is challenging the revocation of his supervised release pursuant to 8 C.F.R. § 241.13(i) and his continued detention, in light of his removal not being reasonably foreseeable.

In the leading case on detention under 8 U.S.C. § 1231, the Supreme Court considered whether any provision under the Immigration and Nationality Act (INA) stripped it of jurisdiction over a § 2241 petition challenging a noncitizen's detention under 8 U.S.C. § 1231(a) after a final order of removal. It rejected several possible jurisdiction-stripping provisions, including a passing reference to § 1252(g), and concluded "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

In other immigration contexts, the Supreme Court more thoroughly explored the contours of the jurisdiction-stripping provision § 1252(g). It "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 20 (2020) (quoting *Reno v. American-Arab Anti–Discrimination Comm.* (*AADC*), 525 U.S. 471, 482 (1999)). Instead, the scope of § 1252(g) is narrower; it applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *AADC*, 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)); *see also Parra v.*

3

*Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (concluding § 1252(g) did not deprive court of jurisdiction over habeas petition challenging mandatory detention under 8 U.S.C. § 1226(c)(1) because petition "did not ask the district court to block a decision to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter" and was limited to legality of "detention while the administrative process lasts," which could "be resolved without affecting pending proceedings.") (quotation marks omitted). The legality of Pho's detention is a separate issue from the decision to execute his removal order—an action that may proceed regardless of his custody status. This petition is not barred by § 1252(g).

## B. Merits

Respondents argue the petition must be dismissed because Pho's current detention, since October 2025, has lasted less than six months—the time period the Supreme Court held in *Zadvydas* is a presumptively reasonable period in which to detain an alien post-removal. Pho responds that the six-month period is not applicable here for two reasons. First, he has already served six months in detention immediately following when his removal order became final; the clock, he says, does not restart for each subsequent period of detention. Second, he argues that his current detention was unlawful from the start because the government had no reason to revoke his supervised release and nothing has made it lawful since then.

### 1. The *Zadvydas* Period

Once a noncitizen is subject to a final order of removal, detention is governed by 8 U.S.C. § 1231, which states that, "except as otherwise provided in this section, when

4

an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."[1] 8 U.S.C. § 1231(a). If the removal is not carried out within the removal period, the statute permits further detention for (1) inadmissible aliens; (2) aliens removable under 8 U.S.C. § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4), and (3) aliens determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal. Those aliens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6).

This statute would appear to authorize indefinite detention in the case of a noncitizen falling under those categories whose removal cannot be carried out. But the Supreme Court read "an implicit limitation" into the statute, namely that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. In recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for

---

[1] This "removal period," requiring mandatory detention, begins after one of three events:

 (i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

5

difficult judgments regarding whether removal is reasonably foreseeable, the Supreme Court adopted a "presumptively reasonable period of detention" of six months. *Id.* "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Here, Pho already spent six months in detention twenty years ago in the period immediately following his removal order. Respondents cite no caselaw supporting the application of the *Zadvydas* period to a subsequent detention following a period of supervised release. Each of the cases respondents cite are inapplicable to this situation.

In *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) the petitioner was detained pursuant to a previous deportation order that was reinstated following an illegal reentry to the United States. The government had shown it was ready to promptly remove the petitioner to El Salvador, but it could not do so until the petitioner's newly asserted claims for withholding of removal (which, if successful, would prevent his removal to that country) were decided. He remained detained while those proceedings were pending, and the Fourth Circuit concluded "[petitioner's] detention pending his withholding-only proceedings does not, standing alone, offend the Due Process Clause" because there was a definite, though potentially far-off, end point and removal could happen soon after. *Id.* at 760.

In *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 (D. Mass. 2017), the "removal period" was expanded beyond 90 days, as allowed by § 1231(c), because the petitioner sought and was granted several discretionary stays of removal from ICE.

6

"[N]umerous courts, including the First Circuit, have found delays attributable to an alien's legal challenges to a removal order to extend the 90–day removal period." *Id.* Respondents cite no such actions on the part of Pho.

Next, *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1332–33 (11th Cir. 2021), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419-23 (2023), stands for the proposition that a noncitizen may be subject to a second "removal period" if a final order of removal is reopened, and thus no longer final, and then becomes final again at the conclusion of later legal proceedings. This is inapplicable as well because Pho's removal order has not been reopened and has remained administratively final since 2004.

Finally, *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734 (D. Mass. Feb. 27, 2018), is the most relevant to Pho's situation. There, the petitioner was re-detained after being on supervised release, but removal was imminent. *Id.* at *3. The government said it "intends to transfer Julce to a detention center in New Hampshire for purposes of arranging his removal to Haiti within 72 hours." *Id.*

The cases cited by respondents demonstrate permissible reasons to re-detain or to prolong an initial detention of a noncitizen based on the same final order of removal include if a prior order of removal is reinstated following an illegal re-entry, if a noncitizen acts to delay the execution of the removal order, if a final order of removal is reopened and then made final again, or if actual removal is imminent. Only the possibility of actual removal is applicable here.

7

Furthermore, applying a six-month period of presumptive reasonableness to every subsequent period of detention would go against the concerns in *Zadvydas*, which noted the broad language in § 1231(a) seemingly authorizes detention in violation of the alien's due process rights. *Zadvydas*, 533 U.S. at 690. Just as "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem," *id.*, so, too, would a statute authorizing wholly discretionary re-detention of a noncitizen. *Zadvydas* declares that detention of a noncitizen past the "removal period" is not authorized by § 1231(a) if it is unrelated to the statutory goals of "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* Allowing the government a six-month period of unreviewable detention every time it re-detains an alien does not advance those statutory goals. Therefore, the court concludes that the government cannot rely on the *Zadvydas* period to justify Pho's detention.

## 2. Authorization for Re-Detention

Respondents argue that Pho's re-detention is lawful because the Department of Homeland Security possess broad authority under 8 C.F.R. § 241.4(l) to revoke supervised release. Respondents are correct that the government possess broad revocation authority for noncitizens whose supervised release falls under 8 C.F.R. § 241.4. But, as Pho points out, his supervised release is governed by 8 C.F.R. § 241.13.

The two regulations work in tandem to govern the release of a noncitizen who is detained under § 1231(a). Section 241.4 governs every release *except* for a release based

8

on a determination that an alien cannot be removed in the reasonably foreseeable future:

> The custody review procedures in this section *do not apply* after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is *no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future*. . . .

8 C.F.R. § 241.4(b)(4) (emphasis added). Section 241.13 confirms this:

> *Section 241.4 shall continue to govern* the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, *unless* the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future. . . .

8 C.F.R. § 241.13(b)(1) (emphasis added). Section 241.4 makes clear that once there is a significant likelihood that the alien may be removed in the reasonably foreseeable future, a noncitizen's detention is again governed by § 241.4, and not § 241.13:

> [I]f the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). In other words, even if a noncitizen would otherwise continue to be detained under the discretionary factors in § 241.4, he may be entitled to release under § 241.13 upon a showing that his removal is not reasonably foreseeable. *See* 8 C.F.R. § 241.13(a)(1).

This distinction makes sense in light of *Zadvydas*, which emphasizes that the only permissible reasons for detention of a noncitizen after the removal period is "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community," and even then, "preventative detention based on dangerousness" has been allowed "only when limited to specially dangerous individuals and subject to

9

strong procedural protections." *Zadvydas*, 533 U.S. at 690-91. So the primary focus of detention under § 1231(a) is on the foreseeability of removal. In fact, § 241.13 was added to the regulations in order to implement the Supreme Court's decision in *Zadvydas*. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 FR 56967-01 ("In light of the Supreme Court's decision in Zadvydas, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future.").

Pho asserts, and respondents do not contest, that he was released in 2005 because there was no significant likelihood of removal in the reasonably foreseeable future. Therefore, the revocation of that release is governed by the standards in § 241.13.

Under the procedures in § 241.13, release may be revoked for one of two reasons, violating the conditions of release or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i). This tracks with the permissible reasons for detention under *Zadvydas*—protecting the community and ensuring a noncitizen's presence for removal.

This discussion of the agency's regulations only serves to underscore that the only possible statutory basis for Pho's re-detention is 8 U.S.C. § 1231(a), which may be used for two reasons: protecting the community and ensuring a noncitizen's presence at

10

future immigration proceedings. *Zadvydas*, 533 U.S. at 690. Here, the government does not contend Pho violated a condition of release, which carries its own penalties, apart from re-detention under § 1231. *See* 8 U.S.C. § 1253(b) ("An alien who shall willfully fail to comply with regulations or requirements issued pursuant to section 1231(a)(3) of this title or knowingly give false information in response to an inquiry under such section shall be fined not more than $1,000 or imprisoned for not more than one year, or both."). Instead, detention must be based on reasonably foreseeable removal. *See Zadvydas*, 533 U.S. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."). Thus, protecting the community is not at issue here.

Pho says removal was not reasonably foreseeable in 2005 when he was released from detention, and it was not reasonably foreseeable in 2020, when he unsuccessfully applied for travel documents from Vietnam. Respondents provide no evidence that anything has changed since then. There is no evidence that anyone has reached out to Vietnam about travel documents for Pho or even that repatriation negotiations are underway. As noted in *Zadvydas*, courts are not well positioned to evaluate how close our government's negotiations with foreign governments might be to resulting in removal. However, the court is able to determine whether *any* steps have been taken towards that end. On this record, the government has taken no steps to effectuate Pho's removal. Therefore, his removal is not reasonably foreseeable, which means his detention is not authorized by 8 U.S.C. § 1231.

## C. Conclusion

For these reasons, the court GRANTS the petition (ECF 1) to the extent that respondents are ORDERED to release Quoc Anh Pho on the same conditions of supervised release that existed before his re-detention custody and to certify compliance with this order by filing a notice with the court by **December 30, 2025**, and DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED on December 29, 2025.

s/Cristal C. Brisco
JUDGE
UNITED STATES DISTRICT COURT